SCHULZ et al. v. DAVIS, County Judge, et al. (No. 6094.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 27, 1918. Rehearing Denied Jan. 8, 1919.)

1. APPEAL AND ERROR ⊜⟿773(4)—FAILURE TO FILE BRIEFS—PLEA FOR AFFIRMANCE—FUNDAMENTAL ERROR.

On appellee's plea for affirmance of judgment, Court of Civil Appeals is required to search the record for fundamental error, and a ruling sustaining exceptions to a petition and dismissing action, which in effect is a ruling that petition states no cause of action, if error, is fundamental error.

2. SCHOOLS AND SCHOOL DISTRICTS ⊜⟿39—CHANGING DISTRICTS—SUPERVISORY POWER OF COURTS.

Acts 34th Leg. c. 36, § 4a (Vernon's Ann. Civ. St. Supp. 1918, art. 2749d), gives district courts supervisory control of action of board of county school trustees in creating and changing school districts, which control will be exercised to prevent or correct their action only when they have exercised that power in a harsh and arbitrary manner amounting to an abuse of discretion.

3. SCHOOLS AND SCHOOL DISTRICTS ⊜⟿20—CONTROL OF SCHOOLS—SUPERVISORY POWER OF COURTS.

Acts 34th Leg. c. 36, § 4a (Vernon's Ann. Civ. St. Supp. 1918, art. 2749d), does not give district courts supervisory control of management or abolition of elementary schools within established districts, nor of establishment or maintenance of rural high schools; such duties, under the law, resting on district school trustees, with successive appeals to county trustees, to state superintendent of public instruction, and to state board of education.

4. SCHOOLS AND SCHOOL DISTRICTS ⊜⟿39—DIVISION OF DISTRICT ACTION.

In suit to require county school trustees to divide a school district, where it was alleged that the two-mill tax was sufficient to maintain both elementary schools in district without a division, allegations that maintenance tax rate was to be raised, or the fact that one elementary school had the money and the other the children, was no reason for a division.

5. SCHOOLS AND SCHOOL DISTRICTS ⊜⟿100—TAXES—INCREASE OF REVENUE.

That one of the two elementary schools in a district needed repairs and ornamentation justified an increase of the revenue from the district within the legal limits.

6. SCHOOLS AND SCHOOL DISTRICTS ⊜⟿34—DIVISION OF DISTRICT—GROUNDS—DISCRETION OF TRUSTEES.

Neither the fact that rural high school in part of a district would enhance values and trade of that part, nor that children of other part could not attend high school, nor that majority of school trustees would be elected by majority of district voters, tended to show that trustees' refusal to divide district was an abuse of power.

7. SCHOOLS AND SCHOOL DISTRICTS ⊜⟿39—DIVISION OF DISTRICT—JUDICIAL SUPERVISION.

Without an allegation, in suit to require trustees to divide a district, that any official action was being taken to inaugurate a system of transportation in a school district, it could not be anticipated that officials might attempt a wrongful act, where, if attempted, a division of district was not the remedy.

8. SCHOOLS AND SCHOOL DISTRICTS ⊜⟿34—DIVISION OF DISTRICT—DISCRETION OF TRUSTEES—ABUSE.

That the surplus of three-fifths of the taxes in part of a district would be used for benefit of the three-fourths of the children in another part thereof would not indicate any abuse of power by board of county trustees in refusing to divide district.

Appeal from District Court, Bexar County.

Suit by M. Schulz and others against J. R. Davis, County Judge, and others. Special exceptions to petition sustained and cause dismissed, and plaintiffs appeal. Affirmed.

See, also, 196 S. W. 727.

Chambers & Watson and D. A. McAskill, all of San Antonio, for appellants.

Lewright & Douglas, of San Antonio, for appellees.

SWEARINGEN, J. By this suit the supervisory control given the district court is invoked by M. Schulz, A. W. Streich, Adolph Lambrecht, O. J. Weller, and Albert Woessner to require the Bexar county school trustees to change the lines of school district No.

23 in Bexar county, Tex., in such manner as will create a new school district out of the northern end. An injunction is also sought to prevent an election for increasing the special school tax from 2 mills to 5 mills, and to prevent an election for the issuance of $15,000 of bonds with which to erect a rural high school within the district, at Elmendorf. The parties defendant, who are appellees herein, are J. R. Davis, county judge; Jacob Rubiola, C. X. Gutzeit, Jacob Klaus, and J. H. Covington, county commissioners; the Bexar county school board, a corporation; C. G. Carter, president of said county school board; T. B. Applewhite, August Liebe, T. P. Dashiell, and H. E. Beck, members of said Bexar county school board; P. F. Stewart, secretary of said county school board; K. J. Smith, Fred Gotari, and A. F. Jacobs, trustees of said school district No. 23; H. W. Ball, appointed by the county judge and commissioners' court of Bexar county to hold an election for increased special school tax in said school district No. 23; and J. C. Schulz, appointed by said county judge and commissioners to hold election in said district No. 23, for issuance of high school bonds for the purpose of erecting a rural high school at Elmendorf in said school district No. 23; and John W. Tobin—all of Bexar county, Tex.

The trial court sustained eight special exceptions to the petition, and refusing to hear testimony in support of those allegations, exceptions to which had been overruled, dismissed the cause.

[1] The effect of this ruling of the trial court was to decree that the petition stated no cause of action. If the objections to the consideration of appellants' assignments be sustained, still we are required by appellees' plea for an affirmance of the judgment to review the record for fundamental error, and if the ruling of the court, to the effect that the petition stated no cause of action, was error, the error is fundamental. Rishworth v. Moss, 159 S. W. 122.

The petition alleges that on the 1st day of January, 1917, there existed a lawful and duly constituted and existing common school district known as "common school district No. 23" of Bexar county, Tex., containing an area of more than 24 square miles, in all things legal and valid. The petition alleges that two elementary schools are maintained in the district, one in the southern end of the district, at Elmendorf, the other in the northern end, known as the Tablito school; and that there is ample valuation in the district to maintain the two schools; and that these two schools are convenient for school purposes of the district, though the Tablito schoolhouse is in need of repair and ornamentation. It is alleged that one-fourth of the school children of the district attend the Tablito school and three-fourths the Elmen-

dorf school, and that three-fifths of the maintenance taxes are paid by the Tablito neighborhood inhabitants and two-fifths by those near Elmendorf. It is alleged that the refusal of the board of county school trustees to divide district 23 was an arbitrary exercise of power and an abuse of discretion. The facts alleged in support of this conclusion of the pleader are that the district is about seven miles long and that the school children living in the northern end of the district are unable to travel to the southern end to attend school because of the distance, the mud, and swollen streams when it rains, the cold when it freezes, and the sand encountered after leaving the northern end of the district. The petition alleges no facts that require the children of the northern end to attend the school in the southern end, save that in the opinion of the pleader the elementary school in the Tablito school will be abolished. It is alleged that, if the district is bonded for a rural high school, no division can be had. There is an allegation that the construction of a building for and the maintenance of a rural high school, as is contemplated, will require such a proportion of the revenues that the Tablito elementary school cannot be maintained. The inconvenience and inadvisability of a rural high school is alleged. The expense and insufficiency of a possible system of transportation is alleged in considerable detail. It is also alleged that, of the $15,000 proposed to be obtained from high school bonds, $6,000 will come from property owners in the northern end. These are substantially the allegations relevant to wrongs of appellants and to the relief sought, culled from the voluminous petition.

[2, 3] As we understand the statute enacted by the 34th Legislature, c. 36, p. 68, § 4a (Vernon's Ann. Civ. St. Supp. 1918, art. 2749d), the district court is given the supervisory control of the actions of the board of county school trustees in creating, changing, and modifying school districts. This supervisory control will be exercised by the courts to prevent or correct the action of the county school trustees only when the county school trustees have exercised their power of districting in a harsh and arbitrary manner that amounts to an abuse of discretion. McLaughlin v. Smith, 105 Tex. 333, 148 S. W. 288; McLaughlin v. Smith, 140 S. W. 248; Minear v. McVea, 185 S. W. 1049; Collin County School Trustees v. Stiff, 190 S. W. 216; Price v. School Trustees, 192 S. W. 1140. The section 4a of the statute does not authorize the courts to exercise a supervisory control of the management, establishment, or abolishment of the elementary schools within established districts, nor of the establishment or maintenance and management of rural high schools. All these duties are by the law required of the district school trustees, with an appeal to the county school trus-

tees, thence to the state superintendent of public instruction, thence to the state board of education. If it were alleged that official action was being taken or had been taken to abolish the Tablito elementary school and to use the revenue for the rural high school such allegations would not tend to show that the county school trustees abused their power by the refusal to subdivide the district. Such facts could mean only that the management of the schools within the district was detrimental, to correct which there is a remedy provided by the statute, by appeal to the state board of education. This mismanagement could be corrected without a division of the district. The facts alleged, that the Tablito school will be abolished and that the children cannot travel seven miles to Elmendorf because of distance and obstructions, have no bearing upon the refusal to divide the district.

[4] It is alleged that a 2-mill tax is sufficient to maintain both the Tablito and Elmendorf elementary schools even without a division of the district. The allegation that this maintenance tax rate is to be raised to 5 mills does not lessen the resources for two elementary schools. There are children and money enough in the district, undivided, for the two elementary schools. The fact that Tablito has the money and Elmendorf the children is no reason for a division.

If the petition alleged facts that tended to show that the refusal to divide the district was such an arbitrary, harsh action of the board of county school trustees as to amount to a willful abuse of the power, then in that event the allegation that official action was being taken to incumber the district with bonds would justify the granting of an injunction, because the division of a bonded school district is forbidden by the statute. But in the present action no facts are alleged that tend to show any abuse of discretion by the board in its refusal to divide the district, hence there is no ground for the ancillary relief by injunction.

[5] No facts are alleged that would justify an order to restrain an election to increase the revenue from the district within the legal limitation of 5 mills. On the contrary, the fact that the Tablito school needs repairs and ornamentation justifies the increase.

[6] Neither the fact that a rural high school in Elmendorf will enhance the values and enlarge the trade in that town, nor the fact that the children of the northern end of the district cannot attend the high school, nor the fact that the majority of the district school trustees will be elected by the majority of the voters of the district, can be considered as allegations tending to show that the refusal to divide the district was an abuse of power. The first assault made upon the common school system was that the un-

fortunate childless property owner would be forced to pay for the education of the children of the more fortunate penniless parents; but this contention did not prevail.

[7] The imaginary system of transportation, upon schedules which the Tablito neighborhood children are said· to be unable to meet because of speed or lack of speed, is purely hypothetical, for it is not alleged that any official action is being inaugurated for such system. In the absence of an allegation that such action has been taken, it cannot be anticipated that officials might attempt a wrongful act; but, even if attempted, there is a remedy, as heretofore indicated. A division of the district is not the remedy.

[8] It appears from the petition· that the petitioners are sorely displeased to have the surplus of their three-fifths of the taxes used for the benefit of the three-fourths of the children that are not theirs. Such facts, as well as all other facts, alleged, fail to indicate any abuse of power by the board of county trustees in its refusal to divide the district, and hence fail to show any cause for a division, or for an injunction restraining the bond election, and the petition wholly fails to show any justification for an order restraining the vote for increase of the maintenance tax.

The judgment is affirmed.

