### HUNT PRODUCTION CO. v. BURRAGE.

#### No. 12400.

Court of Civil Appeals of Texas. Dallas.
March 6, 1937.

Rehearing Denied April 10, 1937.

McEntire, James & Shank, of Tyler, for appellant.

John W. Pope, Sr., and J. Lee Zumwalt, both of Dallas, for appellee.

LOONEY, Justice.

In order that the matter under consideration may appear in its proper setting, the following statement is made: During the year 1925, C. M. Joiner owned certain oil and gas leases in Rusk county, Tex. He divided the acreage into three groups or syndicates, sold and issued to purchasers certain certificates, each evidencing an undivided interest in the acreage composing the syndicate against which the certificate was issued. On October 27, 1930, C. R. Adkins and other certificate holders instituted suit in the Forty-Fourth judicial district court 'of Dallas county against Joiner, seeking the establishment of their respective titles to undivided interests in the syndicates, as evidenced by their certificates, for an accounting, etc., and praying for the appointment of a receiver to take charge of the properties and administer same under the orders of court. Answering the suit, Joiner filed a cross-action and also prayed for the appointment of a receiver. Accordingly, on October 31, 1930, the court appointed Ernest H. Tennant receiver, who qualified and took possession of all Joiner leasehold properties, including the 500 acres involved in the present controversy. DeBogory v. Chapman (Tex.Civ.App.) 75 S.W.(2d) 186. Richard W. Burrage purchased and held a certificate issued by Joiner against syndicate No. 3, composed largely of the 500-acre tract here involved, and on April 7, 1931, filed his plea of intervention in the receivership suit, seeking to have his title established to an undivided 2-acre interest in the 500-acre tract, as evidenced by the certificate, and his plea of intervention was referred to the master in chancery. While the claim of Burrage was pending, H. L. Hunt, individually and as trustee, filed a motion in the original suit, alleging that they were sole owners of the 500 acres, and prayed that same be dismissed from the receivership. Burrage was not a party to this proceeding, nor did he know or have notice of its pendency prior to April 18, 1931, the date of the order of court dismissing the 500-acre tract from the receivership. The order dismissing the land from the receivership contains the following, to wit: " * * * the right of possession thereto shall revert to and vest in the various owners thereof as their interests might appear, and said owners of said property shall be entitled to receive any and all oil taken from said land, now in storage tanks, and all oil and proceeds of oil run from said property since March 31, 1931, said dismissal being without prejudice to the rights of the various owners and/or claimants to said property, as among themselves or with other parties."

Hunt, individually and as trustee, was a party to the original suit; Burrage became a party later by his plea of intervention. After the 500-acre tract was dismissed from the receivership, the master in chancery, after a hearing on Burrage's plea of intervention, filed his report, finding that Burrage was owner of an undivided 2-acre interest in the 500-acre tract. This report being approved, the court, on April 4, 1932, rendered judgment in favor of Burrage, establishing his title to the 2-acre interest. While the record fails to disclose that Hunt was served with notice of the hearing by the court on the master's report, we think it is disclosed with reasonable certainty that Hunt knew of Burrage's claim and plea of intervention. The testimony of Harry B. Harter, employee of Hunt and Hunt Production Company, having charge of their office and office files, testified in substance that Mr. Hunt fully understood matters pertaining to the receivership and was conversant therewith. Tom C. Clark, master in chancery, who held the hearing on Burrage's plea of intervention and approved his claim to a 2-acre undivided interest in the 500-acre tract, testified, in substance, that at the time he knew H. L. Hunt, individually and as trustee, was interested in the matter; that notice of the

hearing was advertised in newspapers in Dallas, Dallas county, Henderson, in Rusk county, and Tyler in Smith county, and personal notices of the hearing were addressed to all interested parties; the witness testifying that it was his custom to notify all interested parties of hearings to be had on claims pending before him. From this testimony we are of opinion, and so conclude, that Mr. Hunt knew of the pendency of Burrage's plea of intervention, and had notice of the hearing thereon by the master.

On May 1, 1932, subsequent to the rendition of judgment in favor of Burrage, Hunt and others organized and procured a charter for Hunt Production Company, and thereafter Hunt conveyed the 500-acre tract to the company, of which he personally owned four-fifths and as trustee held one-fifth, and received in lieu approximately four-fifths of the stock of the company for himself, and one-fifth in his capacity as trustee.

On May 25, 1932 (after the above-recited transactions), Hunt, individually and as trustee, filed in the receivership suit a pleading in the nature of a bill of review, praying that the judgment of April 4, 1932, establishing Burrage's claim to a 2-acre undivided interest in the 500 acres, be set aside. On trial of the bill of review, the court, on June 10, 1933, rendered judgment against Hunt individually and as trustee, denying the relief sought, reciting that: "The court further finds that, after the granting and entering of judgment in favor of Richard W. Burrage, intervenor, H. L. Hunt, individually and as trustee, caused to be filed herein his motion to set aside said judgment and hold the same for naught, to which motion filed, the claimant, Richard W. Burrage, filed his answer, and thereupon, all parties re-introduced on May 6, 1933, all evidence heard before the Master in Chancery, as well as additional oral testimony and documentary evidence, and the court, after hearing and considering all pleadings herein, and after hearing and considering all evidence adduced upon hearings on said motion and answers, and after reviewing briefs filed by counsel for all parties herein, is of the opinion that the relief sought by the said H. L. Hunt, individually and as trustee, should, in all respects, be denied, and that the judgment entered by this court on April 4, 1932, in favor of the intervenor, Richard W. Burrage, should, in all respects, stand in full force and effect * * *."

On refusal by the court to set aside the judgment in favor of Burrage, Hunt appealed, individually and as trustee; no other interested party complained of the judgment.

We dismissed the appeal on the idea that as Hunt, individually and as trustee, had parted with title to said leasehold (having conveyed same to the corporation), he was not an aggrieved party and had no right to an appeal. Hunt v. Burrage (Tex.Civ. App.) 84 S.W.(2d) 1098. In due time, the Supreme Court dismissed an application for writ by Hunt, thus the judgment in favor of Burrage against Hunt, individually and as trustee, became final and, under the facts disclosed, we think, was also binding upon the Hunt Production Company. The appeal by Hunt, as just stated, was on a cost bond, and while same was pending Burrage filed a motion in the original receivership suit, requesting the enforcement of his judgment, to which proceeding he made Hunt, individually and as trustee, also Hunt Production Company, parties— that is, they were served with notice of the motion. Burrage based his right to have the judgment enforced on the ground that the same had not been superseded (at that time the supersedeas bond had not been filed), alleging that he was entitled to his proportionate share of oil runs from the wells on the 500-acre leasehold, which had been denied him by Hunt; wherefore, he prayed the court to resume possession of the land through the receiver theretofore appointed, and to cause the receiver to take into his possession the oil runs from the land, and pay petitioner his proportionate part thereof, this being the specific method adopted by Burrage to secure enforcement of the judgment. To this motion Hunt, individually and as trustee, also Hunt Production Company, filed pleas of privilege to be sued in Smith, the county of their residence, contending that the motion, in effect, was a new and independent suit. Burrage duly controverted these pleas, contending that the motion was not subject to pleas of privilege, for the reason that the court rendering judgment was the only proper jurisdiction for its enforcement. These pleas being overruled, an appeal was prosecuted to this court, which we dismissed for the reason that the filing of the supersedeas bond (on the appeal from the order denying Hunt a review of the judgment in favor of Burrage) had the effect of destroying the motion filed for the enforcement of the judgment, thus

leaving nothing upon which a plea of privilege could be based. Hunt v. Burrage (Tex.Civ.App.) 95 S.W.(2d) 202.

After all these proceedings became final, Hunt Production Company on November 16, 1935, instituted suit against Burrage in form of trespass to try title in the district court of Rusk county, seeking recovery of the 500-acre leasehold (although as disclosed by the record, Burrage had never asserted, and was not then asserting, title to any part of the 500 acres, save and except an undivided 2-acre interest therein). After being cited to answer the trespass to try title suit, Burrage, on December 9, 1935, filed a second motion in the receivership suit, seeking therein, as in his first motion, the enforcement of his judgment, to which Hunt individually and as trustee, and Hunt Production Company, were cited; praying therein that Hunt Production Company be enjoined from prosecuting the trespass to try title suit (being cause No. 11846 on the docket of the district court of Rusk county, Tex.). The application for injunction was granted, enjoining the company from further prosecuting the suit (subject to future orders of court), from which the company appealed to this court, thus presenting for review the order of court granting the injunction.

In stating the nature and result of the question under review, we have taken the essential facts from the record before us, but in stating the original proceedings and the setting of the present controversy, we have drawn from the records of other appeals arising out of the original receivership suit, which, in our opinion, we were authorized to do. Griffith v. Tipps (Tex. Civ.App.) 69 S.W.(2d) 846, 849, and authorities cited.

A contention that runs through the discussion is that, as neither Hunt nor Hunt Production Company had his or its day in court, the judgment in favor of Burrage was not binding on either. To this we cannot agree. Hunt, individually and as trustee, had his day in court on the hearing of the issues presented in his bill of review, and Hunt Production Company (the creature of Hunt and those he represented as trustee), having been organized and becoming purchaser of the land from Hunt during the pendency of the intervention by Burrage and after he had obtained judgment, stands precisely in the shoes of Hunt. The provisions of article 7391, R.S., are in point, reading: "Any final judgment rendered in any action for the recovery of real estate shall be conclusive as to the title or right of possession established in such action upon the party against whom it is recovered, and upon all persons claiming from, through or under such party, by title arising after the commencement of such action."

That a court is charged with the duty and clothed with the power and exclusive jurisdiction to enforce its own judgments is axiomatic; and that it may issue all necessary process and employ suitable methods, legal or equitable, to accomplish that end, is undoubted. Article 2217, R.S., provides that "The court shall cause its judgments and decrees to be carried into execution." Section 8 of article 5 of the Constitution reads: " * * * and said court [district] and the judges thereof, shall have power to issue writs of habeas corpus, mandamus, injunction and certiorari, and all writs necessary to enforce their jurisdiction." To the same effect, see article 1914, R.S. Suits and proceedings in other courts may be enjoined when the prosecution of same will delay, obstruct, or interfere with the proper enforcement of a judgment. Chapman v. DeBogory (Tex.Civ.App.) 83 S.W.(2d) 447, and authorities cited. In Ebner v. Nall (Tex.Civ.App.) 95 S.W.(2d) 1004, the plaintiff sought to enjoin the prosecution of an independent action, seeking the recovery of lands theretofore, in another action adjudged to plaintiff. The court held that the suit was vexatious and oppressive, and that its prosecution should be enjoined. It is also competent, in a proper case, for the court to appoint a receiver as a means of properly enforcing its judgment (Shulte v. Hoffman, 18 Tex. 678), and in such a proceeding, the validity of the original cause of action upon which the judgment sought to be enforced was based, cannot be questioned, as a means of frustrating or obstructing the enforcement of the judgment. City of Sherman v. Langham, 92 Tex. 13, 18, 40 S.W. 140, 42 S.W. 961, 39 L.R.A. 258. Even in cases where, after sale of property under foreclosure (plaintiff being the purchaser), the defendant refused to yield possession, the court, in vindication of its jurisdiction and to render the judgment effective, will issue a writ of assistance to place the purchaser in possession. Voigtlander v. Brotze, 59 Tex. 286. Thus, it seems that courts, in order to effectually enforce their

judgments, will issue such process and employ the means suited to the particular situation.

■ So we conclude that, if the motion or petition filed below by Burrage constitutes an effort on his part to have the court enforce and render effective its judgment, the writ of injunction prohibiting Hunt Production Company from prosecuting the suit pending in the district court of Rusk county (subject to future orders) being ancillary, was authorized and proper, either with or without the giving of bond as a condition precedent to the issuance of the temporary writ of injunction, the statute (article 4649 R.S.) not being applicable to the situation. Neill v. Johnson (Tex.Civ.App.) 234 S.W. 147, 150.

On the other hand, if the proceeding, in essence and legal effect, constitutes and is a separate and independent action based upon the judgment, the injunction should be dissolved; because, in the first place, no bond was either required or given as a condition precedent to the issuance of the writ, as required by article 4649, R.S. [White v. Perkins (Tex.Civ.App.) 65 S.W. (2d) 423; Johnson v. McMahan (Tex.Civ.App.) 40 S.W.(2d) 920; Rogers Ranch Co. v. Darwin (Tex.Civ.App.) 89 S.W.(2d) 828]; and, in the second place, even if the writ to stay proceedings in the trespass to try title suit, pending in the District Court of Rusk County was properly granted, it should have been made returnable to that court, the only court having jurisdiction to try the case. Article 4649, R.S.; Switzer v. Smith (Tex.Com.App.) 300 S.W. 31, 68 A.L.R. 377.

■ So, reverting to the original question, that is, was the proceeding begun by Burrage simply an effort to have the court enforce its judgment, or was it the institution of an independent action based upon the judgment? In determining such a question, the Supreme Court, in Milam County Oil Mill Co. v. Bass, 106 Tex. 260, 163 S.W. 577, 579, said: "The proper test of the question therefore is, not whether the suit recognizes or repudiates the effect of the judgment, since that does not necessarily involve the jurisdiction of the court, but whether it amounts to an interference with its due enforcement and therefore invades a jurisdiction it is forbidden to trench upon." In applying this test, each case must be determined on its own peculiar facts and circumstances. The judgment under consideration was not rendered under usual or ordinary circumstances; the suit was not by one individual against another, in which judgment for a specific interest in land was recovered, but being one of many owners of fractional undivided interests in a large leasehold acreage in the hands of a receiver being administered for the benefit of certificate owners, Burrage was entitled, not only to the confirmation of his undivided interest in the land, but also to a proportionate share of the oil runs therefrom. As shown before, the 500-acre tract in which Burrage established an undivided interest was dismissed from the receivership at the instance of Hunt and others on an allegation, to the effect that they owned the entire interest in the acreage, although at that time Burrage—who was not a party to nor did he have prior notice of the proceeding that resulted in the release of the property from the receivership—owned an undivided interest upon which he intervened, that subsequently matured into a judgment. We think it obvious that, if that situation had been brought to the court's attention, the property would not have been discharged from the receivership, without some suitable provision being made for the protection of Burrage's interest. From the inception of the receivership, October 31, 1930, to April 18, 1931 (the date of the order releasing the 500 acres from the custody of the receiver), the leasehold in question was in possession of the receiver, and from the latter date to the date of the Burrage judgment (April 4, 1932), it was in the possession of Hunt and others. The effect of the judgment was, not only to confirm the right of Burrage to an undivided 2-acre interest in the 500 acre leasehold, but necessarily also confirmed his right to a proportionate share of all oil runs to the date of judgment. The trespass to try title suit filed by Hunt Production Company against Burrage seeks to relitigate the title to the 2-acre undivided interest already determined finally in favor of Burrage as to Hunt and those for whom he acted as trustee and, under the statute quoted and applicable rules of law, was also binding upon Hunt Production Company, which was organized and acquired title to the property after the judgment was rendered. The prosecution of the suit, in our opinion, can have no effect other than to embarrass, hinder, frustrate, and delay the final and successful enforcement of the judgment in favor of Burrage.

We hold that the proceeding filed by him should not be considered an independent suit, but an effort to secure the enforcement of his judgment, and that the writ of injunction, being purely ancillary to the main proceeding, was authorized as a means of effectually enforcing the judgment. We therefore affirm the judgment of the court below.

Affirmed.

BOND, Justice (dissenting on rehearing).

Being unable to agree with the majority opinion herein, I am forced to file my dissent.

This is an appeal from a temporary injunction granted ex parte on the 31st day of October, 1936, enjoining appellant from prosecuting a trespass to try title suit in Rusk county.

The appellant contends that the injunction is void and should be dissolved, for the following reasons: First, because the petition for the injunction contained no prayer for a temporary injunction; second, because the injunction was granted ex parte, upon a petition which was not verified; third, because the appellee was not required to execute and did not file any bond; and, fourth, because the trial court had no jurisdiction to grant the injunction staying the proceedings in the district court of Rusk county, Tex., and that such injunction, if granted, would have to be returnable to the district court of Rusk county.

I think each and all of these points should be sustained.

The record in this case discloses that the temporary injunction was granted without notice to appellant and without hearing; that appellee's petition upon which it was granted contained no prayer for a temporary injunction, was not verified; that no bond was required, and that none was executed and filed.

These are all elementary matters, and regardless of the appellee's right to the injunction the trial court had no power or jurisdiction to grant such relief in the absence of these fundamental requirements.

It is well settled in this state that a court has no jurisdiction to grant a temporary injunction in the absence of a prayer for such relief. Jacksonville Independent School District et al. v. Devereux et al (Tex.Civ.App.) 286 S.W. 573;

Owen et al. v. Willis (Tex.Civ.App.) 20 S.W.(2d) 338; English et al. v. Kermit Townsite Co. et al. (Tex.Civ.App.) 38 S.W.(2d) 898; Hoskins et al. v. Cauble (Tex.Civ.App.) 198 S.W. 629; Dickson v. Waples-Platter Co. (Tex.Civ.App.) 45 S.W.(2d) 428. In view of these authorities, the trial court was without jurisdiction to grant the temporary injunction, in the absence of a prayer for such relief.

Article 4647, Revised Civil Statutes, 1925, provides as follows: "No writ of injunction shall be granted unless the applicant therefor shall present his petition to the judge verified by his affidavit and containing a plain and intelligible statement of the grounds for such relief."

The courts, in construing this article, have universally held that this statutory requirement is mandatory, and that a temporary injunction granted ex parte, upon an unverified petition, is void. City of Groveton v. Josserand (Tex.Civ.App.) 48 S.W.(2d) 382; Johnson et al. v. Ferguson et al. (Tex.Civ.App.) 55 S.W.(2d) 153; Turman v. State (Tex.Civ.App.) 26 S.W.(2d) 661; Bledsoe v. Mack (Tex.Civ.App.) 57 S.W.(2d) 869; Wilson v. State (Tex.Civ.App.) 59 S.W.(2d) 303.

Article 4649, Revised Civil Statutes 1925, provides as follows: "Upon the filing of the petition and order of the judge and before the issuance of the writ of injunction, the complainant shall execute and file with the clerk a bond to the adverse party, with two or more good and sufficient sureties, to be approved by such clerk in the sum fixed in the order of the judge granting the writ, conditioned that the complainant will abide the decision which may be made therein, and that he will pay all sums of money and costs that may be made therein, and that he will pay all sums of money and costs that may be adjudged against him if the injunction be dissolved in whole or in part."

The courts have also universally held (except in a few cases where injunctions were granted under some special statute) that a writ of injunction granted without requiring a bond to be executed is void. White et al. v. Perkins (Tex.Civ.App.) 65 S.W.(2d) 423; Johnson et al. v. McMahan et al. (Tex.Civ.App.) 40 S.W.(2d) 920; Rogers Ranch Co., Inc. v. Darwin (Tex.Civ.App.) 89 S.W.(2d) 828; Ex parte Coward, 110 Tex. 587, 222 S.W. 531; American Rio Grande Land & Irrigation Co. et al. v. Ford et al. (Tex.Civ.App.) 260 S.W. 277.

In Ex parte Coward, supra, the Supreme Court, speaking through Chief Justice Nelson Phillips, said: "Under the statute the giving of a bond is made a condition precedent to the issuance of an injunction. This requirement applies to divorce suits brought by the wife, notwithstanding Articles 4638 and 4639. Wright v. Wright, 3 Tex. 168. The Judge was therefore without power to grant the injunction without requiring a bond from the plaintiff, and the injunction was accordingly void. Williams v. Huff, Dallam, Dig. 554; Diehl v. Friester, 37 Ohio St. 473; Lawton v. Richardson, 115 Mich. 12, 72 N.W. 988. The injunction being void, the contempt orders were equally so." To the same effect is the holding in the following cases: Boykin v. Patterson (Tex.Civ.App.) 214 S.W. 611; Ricker, Lee & Co. v. Douglas Bros., 75 Tex. 180, 12 S.W. 975; Paine v. Carpenter, 51 Tex. Civ.App. 191, 111 S.W. 430; Bettinger v. North Fort Worth Ice Co. (Tex.Civ. App.) 278 S.W. 466; Corzelius v. Cosby Producing & Royalty Co. et al. (Tex. Civ.App.) 52 S.W.(2d) 270.

American Rio Grande Land & Irrigation Co. et al. v. Ford et al., 260 S.W. 277, 278, Court of Civil Appeals at San Antonio, opinion written by the late Chief Justice Fly, was a case where a temporary injunction was granted without a prayer for injunction, without affidavit, and without bond. Judge Fly, in holding that this injunction was void, said: "The statute is imperative in demanding that before the issuance of a writ of injunction the complainant shall execute and file with the clerk a bond to the adverse party, with two or more good and sufficient sureties. There is no exception to this mandatory requirement, except in case the state of Texas is the complainant. Rev.Stats. art. 4654. There is no exception made in a case in which a judge of a trial court may desire to enjoin a party in a case from doing certain things. In no Texas case has it been held that a trial judge has any such power, even though the attempt to do so is coupled with a fine for contempt. * * * We hold that he had no right or authority to issue such writ without a petition, affidavit, or bond. * * * No authority is given anywhere in the laws of Texas for a district judge to grant a preliminary writ of injunction without a petition, but on the other hand, in article 4649, it is provided: 'No writ of injunction shall be granted, unless the applicant therefor shall present his petition to the judge, verified by his affidavit, etc.' In this case there was no application, no affidavit, no bond, although all of them are required by law before an injunction can be granted."

Article 4656, Revised Civil Statutes 1925, provides as follows: "Writs of injunction granted to stay proceedings in a suit, or execution on a judgment, shall be returnable to and tried in the court where such suit is pending, or such judgment was rendered; writs of injunction for other causes, if the party against whom it is granted be an inhabitant of the State, shall be returnable to and tried in the district or county court of the county in which such party has his domicile, according as the amount or matter in controversy comes within the jurisdiction of either of said courts."

This statutory requirement has repeatedly been held to be jurisdictional, and not a mere venue statute. Milam County Oil Mill Co. et al. v. Bass et al., 106 Tex. 260, 163 S.W. 577; Mann et al. v. Pace (Tex.Civ.App.) 58 S.W.(2d) 1070, 1072; Switzer et ux. v. Smith (Tex.Com.App.) 300 S.W. 31, 32, 68 A.L.R. 377; Box v. Oliver (Tex.Civ.App.) 43 S.W.(2d) 979, 980.

Under the above-quoted article and the authorities cited, the trial court was clearly without jurisdiction to grant the injunction herein. If it were conceded that appellee was entitled to the injunctive relief sought, which I do not concede under the record in this case, he would yet be required to seek such relief in the district court of Rusk county, where the proceedings sought to be enjoined are pending. I do not think that this case can be distinguished on principle from any of the above-cited authorities.

The Commission of Appeals in Switzer et ux. v. Smith, supra, said: "This is more than a mere venue statute; it has to do with jurisdiction. Its purpose is not the protection of the citizen in his ordinary right to be sued in the county of his domicile, but rather it is a law of comity, for the protection of the dignity of our courts."

The Court of Civil Appeals at Waco, in Mann et al. v. Pace, supra, in passing upon the case, where the issue is identical with the issue in the case at bar, said: "The writ of injunction when issued in

such cases must, except under circumstances not involved in this case, be granted by the judge of ·the court in which the suit in which proceedings are sought to be stayed is pending, and must be made returnable to and tried in such court. R.S. arts. 4643 and 4656. Such statutory requirements are jurisdictional. Seligson & Co. v. Collins, 64 Tex. 314, 315, and authorities there cited; Gohlman, Lester & Co. v. Whittle, 115 Tex. 9, 273 S.W. 806, 807, et seq.; Switzer v. Smith (Tex.Com.App.) 300 S.W. 31, 32, 68 A. L.R. 377, pars. 1 and 2; Friedrich v. Brand (Tex.Civ.App.) 28 S.W.(2d) 279, 282, par. 3, and authorities there cited; Box v. Oliver (Tex.Civ.App.) 43 S.W. (2d) 979, 980, par. 2, and authorities there cited."

In Box v. Oliver, supra, the Court of Civil Appeals at· Waco said: "Injunctive relief being the sole purpose of this suit, the provisions of the articles quoted apply, and .the court was without authority to make the order restraining appellant from arresting or attempting to arrest appellee in Robertson county, or to make the writ returnable to the district court of Limestone county. Uvalde Rock Asphalt Co. v. Asphalt Belt Ry. Co. (Tex.Com.App.) 262 S.W. 736, 737, par. 2, reversed on rehearing and on other grounds (Tex.Com.App.) 267 S.W. 688; City of Dallas v. Armour & Co. (Tex.Civ.App.) 216 S.W. 222, 225, par. 6 (writ refused); Lee v. Broocks, 54 Tex.Civ.App. 220, 118 S.W. 164, 166; Brown v. Fleming (Tex.Civ.App.) 178 S. W. 964, 965; Broocks v. Lee, 50 Tex.Civ. App. 604, 110 S.W. 756, 757, and authorities there cited."

There is another reason why the judgment of the trial court should be reversed and the injunction dissolved. The appellee's petition does not set forth any grounds which would entitle him to an injunction. Furthermore, this record shows that appellee has an adequate· remedy at law which would, if resorted to, be as effectual as the harsh remedy of an injunction.

This record discloses that the trespass to try title suit in Rusk county was filed on November 15, 1935; that the appellee's petition herein was filed December 9, 1935. All the reference which appellee makes in his petition to an injunction, in so far as it relates to the suit in Rusk county, is as follows: "That instead of observing and complying with the judgment of this court in your petitioner's

behalf and in compliance with said judgment, the said Hunt Production Company on the 15th day of November, A. D. 1935, instituted a suit in the District Court of Rusk County, Texas, as plaintiff and against your petitioner as defendant, and being numbered 11846 upon the docket of said court, and citation was issued on the 22nd day of November, 1935, and duly served upon your petitioner shortly thereafter. Said citation commanding him to appear on the 6th day of January, 1936, and answer the plaintiff's petition, which is in the form of trespass to try title to the property above described. * * * That a writ of injunction issue commanding and requiring said Hunt Production Company to immediately dismiss said suit brought by it in Rusk County District Court above mentioned and prohibiting it and the said H. L. Hunt, individually and as Trustee, and all other persons acting for and on behalf of said corporation, from further prosecuting said suit and requiring dissolution thereof and prohibiting the institution and prosecution of any other suit or ¯suits attacking in any manner your petitioner's judgment aforesaid. * * *"

It will be readily observed from these allegations that they are not sufficient, even if properly verified or substantiated by evidence, to entitle appellee to an injunction. There is no copy of the petition in the Rusk county suit attached to appellee's petition, therefore his allegations as to the subject-matter of said suit are mere conclusions, and do not furnish the basis for the granting of an injunction. Hannah v. Russ (Tex.Civ.App.) 238 S.W. 333.

The appellee does not allege in what way or manner Hunt Production Company is not "observing and complying with the judgment" rendered April 4, 1932. There is nothing in the said judgment commanding Hunt Production Company, or its predecessor, H. L. Hunt, trustee, to do anything, nor forbidding them to do anything. Hence the said allegations are mere conclusions. Appellee's petition does not negative facts sufficient to show that appellant is not entitled to prosecute the suit in Rusk county, as required by the authorities. See Tex. Jur. vol. 24, p. 222, and authorities cited. Appellee nowhere alleges that Hunt Production Company has never acquired any other title to the said property, or that appellee is still vested with title to same, or that appellant is seeking to relitigate any issue which has been heretofore adjudicat-

ed. He nowhere alleges that the suit in Rusk county was not filed in good faith, or that the injunction sought is to prevent a multiplicity of suits, or that the Rusk county suit was filed to vex, harass, or oppress appellee, or that the same was filed for the purpose of hindering, delaying, or frustrating the enforcement of the judgment of April 4, 1932. If his petition had contained such allegations, the record herein would refute substantially all of such allegations. He does not allege that the suit in Rusk county involves the same subject matter as the suit at bar. If he did, the record discloses that the suit in Rusk county was filed prior to the filing of this suit. Furthermore, if those were the facts, he would have his legal remedy of filing a plea in abatement in the Rusk county suit, which he would unquestionably be required to do under the authorities. Furthermore, in the absence of pleadings to that effect, this court has no authority to assume that the title put in issue in the suit in Rusk county is the same as the one involved in the judgment of April 4, 1932. The majority opinion has assumed the existence of facts which do not appear in the record.

I am also unable to agree with the majority opinion in the holding that the proceedings filed by Burrage on the 9th day of December, 1935, should not be considered as an independent suit, but was an effort to secure the enforcement of a judgment. His naming the petition a "Motion to Enforce Judgment" does not, in fact, make it such. To determine what a pleading is, its substance must be looked to, and not the name the pleader may choose to call it. It is the substance and not the shadow that controls.

The judgment sought to be enforced is purely declaratory, and does not require enforcement. It does not purport to do more than vest in appellee title to two acres undivided in the land in question. With this title and ownership go all of the rights which follow the ownership of any like property, however acquired; but there is nothing peculiar about this ownership merely because it was acquired through a judgment. The acquisition of this property through a judgment would not vest in Burrage any extraordinary remedies with reference to the enforcement of such rights. The venue of any cause of action accruing to appellee by virtue of the title vested in him by said judgment would be subject to the venue statutes in the same manner as if he had acquired the land by deed. And even though appellee has the right to sue appellant for an accounting, or for a partition of the property, or to enforce any other right with reference to said property, he should not be privileged to do so in disregard of the venue statute, and thereby, under the mere guise of enforcing a judgment, deprive appellant of the valuable right of being sued in the county of its residence. When a petition requires the service of citation to acquire jurisdiction of the defendant, and presents fact issues which either party may demand a jury to determine (as has been done in this case), and upon a determination of such fact issues by the jury a judgment is necessary to be entered, from which either party to such proceeding could appeal, such judgment would necessarily constitute a final and independent judgment, and would not constitute the enforcement of some existing judgment.

Furthermore, the appellee alleges no grounds whatever, either statutory or equitable, sufficient to warrant the appointment of a receiver in this case, and if one should be appointed the same would not in any manner constitute the enforcement of the judgment, and could serve no other purpose than to harass and oppress the appellant. The authorities cited by the majority opinion on this point furnish no support for the appointment of a receiver in this case. The cited case, to wit, Henry Shulte v. Hoffman, 18 Tex. 678, was a suit in which one partner sued another to terminate the partnership and liquidate the partnership estate, and sought in the original petition the appointment of a receiver for this purpose. An interlocutory receiver was appointed who, it appears, later resigned or left the state, and in the final judgment another receiver was appointed for the purpose of liquidating the assets of the estate. The appointment of a receiver, however, was a part of the final decree. A receivership in this instance was, in fact, the carrying out of the express provisions of the judgment. In such cases there are grounds for the appointment of a receiver, and a service for him to render. The same thing was done in Duncan v. Thompson et al. (Tex.Civ.App.) 29 S.W.(2d) 441; Id. (Tex. Com.App.) 44 S.W.(2d) 904, which was a suit to terminate the partnership and liquidate the partnership assets. But in that case, as in the case cited in the majority opinion, the receiver was appointed in the judgment itself, and the judgment itself decreed exactly what the receiver was to

do. It did not require another judgment to determine the right to the appointment of a receiver, nor his duty and authority.

Neither is the authority cited in the majority opinion in support of the injunction in point. The cited case, to wit, Neill v. Johnson (Tex.Civ.App.) 234 S.W. 147, was a controversy over an automobile where the state had taken it into possession under the provisions of the Dean Law (Acts 1919, 2d Called Sess. c. 78, § 1 et seq.), and a third party filed a suit for possession and a claimant's oath and bond, in another court. In that instance the party enjoined was attempting to interfere with the very property which was in the actual custody of the court granting the injunction. In that case, the defendant enjoined was interfering with the very property which the court had taken possession of, and naturally interfering with its jurisdiction. The proceedings which the injunction granted herein by the trial court enjoined constitute no such interference.

Furthermore, under the history of this litigation, I think that Hunt Production Company has an absolute right to prosecute the suit in Rusk county, even though such suit may call into question the judgment in favor of Burrage. Not being a party to the said judgment, it may have rights superior to it; it certainly has the right to have this judgment construed and its legal effect determined, and to do so does not constitute an interference with the jurisdiction of the court rendering such judgment. The suit in Rusk county was filed more than three years and a half after the judgment was rendered. Milam County Oil Mill Company v. Bass, supra.

I cannot agree that Hunt Production Company has had its day in court in this controversy. It is true the record in these various proceedings shows that the property in question was conveyed to Hunt Production Company subsequent to the date of the judgment in favor of Burrage. And if its grantor, H. L. Hunt, trustee, had been permitted to prosecute his appeal from the judgment overruling his petition to set the judgment of April 4, 1932, aside, I think Hunt Production Company should be held to be bound by the proceedings prosecuted by Hunt, trustee, which would have inured to its benefit. However, by the court dismissing Hunt's appeal and not permitting him to prosecute the suit to final conclusion, it would not be just to hold Hunt Production Company bound by such proceedings. Hunt Production Company had no

right to prosecute the bill of review to set the Burrage judgment aside, it not having been a party to the proceedings wherein said judgment was rendered. Swift v. Parmenter et al. (C.C.A.) 22 F.(2d) 142; Thompson v. Maxwell Land Grant & R. Co., 95 U.S. 391, 24 L.Ed. 481; J. A. Mayes v. Woodall, 35 Tex. 687; McGhee v. Romatka, 18 Tex.Civ.App. 436, 44 S.W. 700; 21 C.J. 729. Certainly either Hunt, trustee, or Hunt Production Company should have the right to contest the judgment in favor of Burrage to a final conclusion. The dismissal of the appeal placed the parties in the same status, so far as Hunt Production Company is concerned, as if the trial court had dismissed the suit. The interests of H. L. Hunt individually and Hunt Production Company in the property are identical, and to hold that H. L. Hunt, who owned four-fifths of the property in question prior to the organization of Hunt Production Company, could not prosecute the suit to final conclusion on behalf of his grantee, Hunt Production Company, in which Hunt owned four-fifths of the stock, and therefore owned the·identical same interest in the property after it passed to the corporation as he owned in it prior thereto, would be to permit matters purely formal to supersede substance, realities, and principles. Such proceedings would make the courts of the country mere forums for the display of technical skill, rather than institutions established to do substantial justice between litigants. Hunt was affected exactly to the same extent by the corporation losing the property as he would have been if the corporation had not been organized. Courts should not be too quick to shut their doors in the face of those who come seeking a determination of what they think to be their rights. Every litigant who, in good faith, enters their portals, should leave·feeling that he has been fairly and impartially heard to conclusion, and that he has been accorded his day in court, even though he may not, in the end, have accomplished his purpose.

Under the facts disclosed by the entire history of these proceedings, I think a manifest injustice will be done Hunt Production Company if it is not permitted in some court to contest the validity of the judgment entered in favor of Burrage on April 4, 1932. The record discloses without dispute that both Hunt and Burrage came into the suit filed in October, 1930, in exactly the same way, to wit, by plea of intervention. The record further dis-

closes that after Burrage had intervened in the suit, to wit, on the 7th day of April, 1931, both Hunt and the land in question were, on the 18th day of April, 1931, dismissed out of the suit.

The judgment of the court dismissing the 500 acres out of the suit recites:

"On this, the 18th day of April, A. D. 1931, came on to be heard the motion of C. M. Joiner, H. L. Hunt, W. B. Osborne, E. B. McDavid, W. A. Brookshire, John Malone, Mamie Smith, Chassie Buford, Leota Brannon, Mrs. Lake N. Bruce, John B. Rowland, M. R. Thomas, Alexander Smith Oil Company, G. O. Golightly, L. W. Capps, R. C. McElmurry, K. C. Miller, Leo V. Ryan, H. C. Miller, Murray Butler, Donna Buford, Ray Carter, J. W. Blanton, H. N. Lane, A. V. Lane, Vivian Duncan, R. J. Glass, to dismiss without prejudice the above styled and numbered cause, and the receivership ancillary to said cause, insofar as they effect the following described property to-wit: (Describing the 500 acres of land.)

"And it appearing to the court from the findings of the Honorable Tom C. Clark, Master in Chancery herein, and from the evidence adduced before the court, that said above named parties *are the only parties of record claiming any right, title or interest in and to said above described property* (italics mine), and that said motion should be granted, and said partition suit and receivership, insofar as it applies to them and above described property should be dismissed.

"It is therefore considered by the court, and so ordered and decreed that said above styled and numbered cause insofar as it applies to the said described property, and to that extent only, is dismissed and the receiver is directed to release said property, together with all personal property located thereon from his custody and control as such receiver, and the right of possession thereto shall revert to and vest in the various owners thereof (above owners) as their interests might appear, and said owners of said property shall be entitled to receive any and all oil taken from said land, now in storage in the tanks, and all oil and proceeds of oil run from said property since March 31, 1931, said dismissal being without prejudice to the rights of the various owners of and/or claimants to said property as among themselves, or with other parties, and without prejudice to the rights of H. L. Hunt under and by virtue of his

contract with Ernest R. Tennant, as receiver * * *"

Obviously, the dismissal of the 500 acres from the suit was without prejudice to the rights of the various owners named in the judgment; it was dismissed with prejudice to the claim of Burrage. Burrage was a party to that suit, asserting some character of claim to be determined against C. M. Joiner, without specifying the kind of claim or the land to which his claim attached.

When the court dismissed Hunt and the land out of the suit, it thereby lost jurisdiction to enter any judgment adverse to Hunt without in some way acquiring jurisdiction of him. On the 5th day of April, 1932, practically one year later without any character of notice to Hunt, a judgment was entered in favor of Burrage. Hunt was not served with notice of the hearing, had no knowledge thereof, or of the judgment entered. He was not advised that Burrage was asserting any claim to the 500 acres of land, and the Hunt Production Company did not know of such claim. The majority bases its finding that Hunt knew of Burrage's claim and plea of intervention of the testimony of Harry B. Harter, employee of Hunt and the Hunt Production Company, and the testimony of Tom C. Clark, master in chancery. Harry B. Harter testified that he kept the records for Hunt, and that he knew of no such claim or plea, and on cross-examination testified:

"Q. You think Mr. Hunt is fully conversant in all matters here in this receivership? A. I am sure that he is.

"Q. That is the way he impressed you in conversation with you about the matter? A. I have never discussed any detail with Mr. Hunt; his time is valuable and I think he has always discussed it with Mr. McEntire.

"Q. What do you base your judgment on that he is familiar with it, if you have never discussed it? A. In what respect?

"Q. Well, you expressed an opinion that Mr. Hunt understood all matters, now you say you never conferred with him?"

Obviously, this testimony does not convey the finding that Hunt knew of the Burrage claim. Tom C. Clark testified that he published notices in Dallas, Rusk, and Smith counties, of the hearing on Burrage's claim, and that it was his custom to send notices to all interested parties; and that he knew that Hunt was an interested party,

and on cross-examination testified: "I did not mail out the letters (notices) myself, but I am sure that one was mailed." I am impressed that this testimony does not show that Hunt or the Hunt Production Company had notice of the claim of Burrage. This is all the testimony bearing on the issue. Therefore Hunt Production Company, who purchased the property while the record was in that state, had the right to assume that Hunt would be permitted to prosecute a suit in its behalf to set said judgment aside. Daniel Boone Coal Co. v. Crawford, 203 Ky. 666, 262 S.W. 1097; Matthew Wood .v. George and Burk Yarbrough, 41 Tex. 540; Smith et al. v. Gerlach et al., 2 Tex. 424, 47 Am.Dec. 657; Philip Mickle v. Amos Gould et al., 42 Mich. 304, 3 N.W. 961. And to hold that Hunt could not prosecute the suit, and that Hunt Production Company is bound by the judgment, is palpably unjust.

Furthermore, to hold that Hunt was bound by an adverse judgment entered a year after he was dismissed out of the suit, and at the same time hold that a judgment entered adverse to Burrage dismissing Hunt out of the suit, at a time when Burrage was a party to the suit, was not binding on Burrage, is inconsistent. Burrage being a party to the suit at the time the judgment of dismissal was entered, the judgment, even if Burrage had no actual notice of it, would not be void, but at the most only voidable, and would be binding upon him until set aside.

The record in these proceedings further reflects that in the bill of review proceedings filed by H. L. Hunt, trustee, appellee herein filed a cross-action in which he then sued for an accounting of the oil produced from the property in question up to date, and also asked that said property be placed back in receivership. While the judgment on the bill of review did not expressly deny the accounting and the receivership, it made no mention of either, and hence they were therefore denied by implication. This would constitute res judicata of the issue of an accounting up to that date, to wit, June 10, 1933, the date of the judgment denying the bill of review, and also would be res judicata on the issue of the appointment of a receiver, since the appellee did not appeal from that judgment. A judgment which fails to grant relief sought in a petition or cross action is as much an adjudication of such issues as if the judgment expressly denied such relief. W. M. Tram-

mell et al. v. Sam Rosen, 106 Tex. 132, 157 S.W. 1161; Johnson et ux. v. Bussey et al. (Tex.Civ.App.) 95 S.W.(2d) 990 (writ refused).

Therefore, under the view I take of this matter, the proceeding filed by Burrage in December, 1935, constitutes a new and independent suit, seeking, among other things, original injunctive relief, and the injunction sought is not ancillary; and by reason of the facts herein recited, the judgment of the trial court granting the injunction should be reversed and the injunction dissolved.